UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH J. DONOVAN,

    Plaintiff,

v.

LIBERTY MUTUAL GROUP, INC.
and ROBERT ANDERSON,

    Defendants.
_____/

Case No. 1:10-cv-24

HON. JANET T. NEFF

## OPINION

Plaintiff Sarah Donovan, a former Kentwood, Michigan Branch Manager for Defendant Liberty Mutual Group, Inc. ("Liberty Mutual" or the "Company"), filed this age and gender[1] discrimination case against the Company and her former regional manager, Robert Anderson, after her employment was terminated on January 23, 2009, purportedly for falsifying expense reports (Compl. ¶¶ 6-9). Plaintiff alleges that she was replaced by a substantially younger male employee with significantly less experience, skill, and knowledge (*id.* ¶ 10). She alleges discrimination claims under federal and state law, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a), and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS ANN. § 37.2101 *et seq*. Defendants have filed a Motion for Summary Judgment (Dkt 52); Plaintiff has

---

[1] Plaintiff stipulated to the dismissal of her gender discrimination claims (Dkt 45).

filed a Response (Dkt 76); and Defendants have filed a Reply (Dkt 82). For the reasons that follow, Defendants' Motion is properly granted.[2]

## I. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005). After reviewing the whole record, the Court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The party moving for summary judgment has the initial burden of showing that no issue of genuine material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Slusher,* 540 F.3d at 453.

## I. Facts

Plaintiff was hired by Liberty Mutual on December 3, 1990 as a Sales Representative in the Company's Springfield, Illinois office (Defs. Statement of Undisputed Material Facts (SMF), Dkt

---

[2] Having fully considered the parties' motion briefs and statements of uncontested facts, the Court determines that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

53, ¶ 1, Pl. SMF Resp. ¶ 1[3]). Plaintiff was promoted to various management positions, and in August 2008, became Branch Manager over the Kentwood and Kalamazoo offices with responsibilities for both Sales Representatives and service employees (Defs. SMF ¶¶ 2-4). That same month, Defendant Robert Anderson became her manager, and Kelly Kahler became the Branch Manager over the Rockford Village and Holland offices (*id.* ¶¶ 5-6).

As Branch Manager, Plaintiff was provided with a Company-issued USBank Visa card, in her name, for business expenses (*id.* ¶ 10). In accordance with Company practice, Plaintiff would submit regular expense reports through the Company's online "iExpense" program (*id.* ¶ 16), which provided for reporting and reimbursement/payment of cash expenses as well as credit card charges (*id.* ¶ 17). The iExpense program also provided for designation of personal expenses charged to the Company-issued credit card (*id.* ¶¶ 10, 18, 24-25). Plaintiff admits that she made personal purchases on her Company card (*id.* ¶¶ 25-26).

Liberty Mutual maintained a Code of Business Ethics and Conduct ("Code of Conduct") that was updated annually, which Plaintiff admits she received for 2006 through 2008 (*id.* ¶¶ 8-9, citing also Defs' Exs. 5-10). Plaintiff also admits that she received the Corporate Travel Policy ("Travel Policy") and that she was familiar with the Travel Policy in place in 2008 (*id.* ¶ 11, citing Defs. Exs. 12-13). Plaintiff admits that she understood that one of the consequences of submitting fraudulent, or inaccurate, expense reports was termination of employment with Liberty Mutual (*id.* ¶¶ 13-14).

---

[3]For ease of reference, the Court will cite to only Defendants' SMF, where those facts are undisputed by Plaintiff's corresponding response.

Following a November 2008 business trip to Orlando, Florida, which included Company-permitted travel by both Plaintiff and her husband, Defendant Anderson questioned Plaintiff about her expense report, which included expenses for the personal stay in Florida of Plaintiff and her husband prior to the Company meeting, contrary to Company policy (*id.* ¶¶ 37-38). Plaintiff apologized for the mistake, and pursuant to his authority, Defendant Anderson rejected her expense report (*id.* ¶ 39).

In December 2008, Defendant Anderson and Plaintiff had further communications regarding Anderson's concerns about Plaintiff's expense reports, including an email from Anderson to Plaintiff with a reminder/warning of her accountability for accurate expense reporting and the possible consequences of submitting false or inaccurate expense reports (*id.* ¶ 41). Plaintiff took issue with Anderson's criticism and responded in her own defense that any one of his managers may make a mistake and that his due diligence caught her error, and it was corrected (*id.* ¶ 42). Plaintiff noted that Anderson clearly had issues with her, either personally or professionally, and she requested an opportunity to discuss the issues, with mediation (*id.* ¶ 43).

On December 15, 2008, Plaintiff met with Defendant Anderson and they discussed various topics, including Anderson's alleged poor treatment of Plaintiff, and Plaintiff's claimed expenses for the Florida trip, specifically, charges related to her husband's plane fare (*id.* ¶ 45). Human Resource Generalist Michael Willerer sat in on the meeting (*id.* ¶¶ 42-43). Although both parties left the December 15 meeting with a positive view that the "air had been cleared," Anderson subsequently further questioned Plaintiff's reported expenses, bringing his concerns to Willerer, who thereafter raised the issue with his boss, Human Resources Field Manager, Kathleen Killacky (*id.* ¶¶ 40, 49-54). In January 2009, Killacky contacted Liberty Mutual's Fraud Detection &

Investigation Unit, requesting an investigation of Plaintiff's expenses for the entire 2008 calendar year (*id.* ¶ 54-55).

The review of Plaintiff's expense reports for 2008 showed that Plaintiff had submitted duplicate expensing for six items as both charges on her Company VISA card and as cash expenses (*id.* ¶ 56). Killacky forwarded the results of the investigation to Human Resources Consultant Sherryl Hollis, expressing her concern that Plaintiff's expense reports included double submissions, one for credit and one for cash, and questioning whether termination of Plaintiff's employment was appropriate (*id.* ¶ 57). Hollis responded via email, stating that if the situation were as bad as it looked, termination would be consistent with how other cases were handled, and that Plaintiff should be asked to explain her dual entries and provide receipts (*id.* ¶ 58).

Killacky subsequently notified Defendant Anderson that he should meet with Plaintiff to review the results of the investigation and question her about the expense submissions (*id.* ¶ 59). On the morning of January 23, 2009, Anderson and Willerer met with Plaintiff to discuss the questioned expenses, asking her to explain why she submitted six of her 2008 expenses twice, once as a cash expense and once as a credit expense (*id.* ¶ 61). After being advised of the questioned expenses, Plaintiff admitted that she submitted three of the expenses twice, and she had no explanation for why (*id.* ¶¶ 62-63).

On the afternoon of January 23, 2009, following a quick response call ("QRC") to determine disciplinary action, the QRC Group decided to recommend termination of Plaintiff's employment (*id.* ¶¶ 64-66). According to Killacky, seven individuals participated in the QRC: Defendant Anderson, Willerer, Killacky, John Mahoney (former Vice President of Personal Markets, Manager, Field Operations and Anderson's direct supervisor), Sherryl Hollis, James Quade (Associate Vice

5

President Personal Markets, Director-Field Sales Operations), and Julie Whitmore (Manager Human Resources) (*id.* ¶ 65). After the QRC, and authorization from a Company vice-president, Plaintiff was notified that her employment was terminated that same day (*id.* ¶ 70).[4]

## II. Discussion

Plaintiff presents claims of age discrimination under both the ADEA and ELCRA. The ADEA provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the ELCRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age." MICH. COMP. LAWS § 37.2202(1)(a). The parties agree that the analysis of Plaintiff's claims is the same under either statute for purposes of this motion. *Geiger v. Tower Automotive,* 579 F.3d 614, 620, 622, 626 (6th Cir. 2009); *Agnew v. BASF Crop.,* 286 F.3d 307, 309 (6th Cir. 2002). "'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Geiger,* 579 F.3d at 620 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).

An age discrimination claim may be proved through either direct or circumstantial evidence. *Geiger*, 579 F.3d at 620, 622, 626; *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004); *Town v. Mich. Bell Tel. Co.,* 568 N.W.2d 64, 67-68 (Mich. 1997). Plaintiff does not

---

[4]The Court declines to consider Plaintiff's alleged factual disputes that are unsupported by the record or without citation to record evidence. In any event, to the extent that Plaintiff disputes specific aspects of Defendants' statements of fact recited herein, the Court finds the disputes immaterial to the dispositive legal issues.

dispute Defendants' assertion that there is no direct evidence of any age discrimination in this case (Defs. Br., Dkt 54 at 15; Pl. Resp., Dkt 76 at 14-15). Plaintiff argues instead that she has met her burden to establish a prima facie case of discrimination based on circumstantial evidence (Pl. Resp. at 14). She further argues that the evidence shows that Defendants' given reason for her termination was pretext and indicates intentional discrimination (*id.* at 17).

To state a prima facie case on a disparate treatment theory using circumstantial evidence, a plaintiff must establish the four elements of the well-known test from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973): (1) that she was a member of a protected class, i.e., over 40; (2) that she was discharged; (3) that she was qualified for the position held; and (4) that she was replaced by someone outside of the protected class, i.e., that she was replaced by, or treated less favorably than, someone substantially younger. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264-65 (6th Cir. 2010); *Geiger*, 579 F.3d at 622. The same evidentiary burdens apply in cases brought under the ELCRA. *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 501 (6th Cir. 2007); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).

Once a plaintiff satisfies her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Schoonmaker,* 595 F.3d at 264 (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)). If the employer meets this burden, then the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination. *Id.* The burden of persuasion, however, remains on the ADEA plaintiffs at all times to demonstrate "'that age was the 'but-for' cause of their employer's adverse action.'" *Geiger*, 579 F.3d at 620 (quoting *Gross v. FBL Fin. Services, Inc.*, ___ U.S. ___; 129 S. Ct. 2343, 2351 n.4 (2009)).

Finally, "[a] plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

Plaintiff argues that she has shown all four elements of a prima facie case of discrimination. Defendants concede that the first two elements are met: Plaintiff is over 40, and she was discharged (Defs. Br. at 21). Thus, the parties dispute whether Plaintiff has shown that she was qualified for the Branch Manager position (element three) and whether she was treated less favorably than or replaced by a substantially younger person (element 4).

With regard to element three, Plaintiff argues that she was clearly qualified for the Branch Manager position because she was a stellar employee for 19 years before her discharge and was Branch Manager of the Year the year prior to her termination. Defendants do not dispute that during her tenure with Liberty Mutual, Plaintiff received satisfactory performance reviews and past performance recognition, but they argue that this type of information is stale since it relates to a different position (Sales Manager) or Plaintiff was under the supervision of different managers when she received the performance recognition. While Defendants could conceivably prevail on this element, the Court finds their argument an insufficient basis for granting summary judgment. Viewing the evidence in the light most favorable to Plaintiff, she has established that she was qualified for the Branch Manager position.

With regard to element four, the parties dispute that Plaintiff was replaced by a substantially younger person. Defendants assert that Plaintiff was not "replaced" by anyone because, in fact,

Kahler (born in 1961) assumed Plaintiff's duties in addition to her existing branch manager responsibilities. Plaintiff argues that Kahler, who was 10 years younger than Plaintiff, only temporarily assumed Plaintiff's Branch Manager duties during the time that Willerer, who was sixteen years younger than Plaintiff, was trained for Plaintiff's position, and that Plaintiff was ultimately replaced by Willerer. Although this element is certainly a closer call than element three, viewing the evidence and all reasonable inferences in favor of Plaintiff, a sufficient factual dispute exists to preclude summary judgment on this basis.

In light of the above determinations, Defendants are not entitled to summary judgment on the grounds that Plaintiff has failed to establish a prima facie case of discrimination. The remaining question is whether Defendants have articulated a non-discriminatory reason for Plaintiff's termination sufficient to warrant summary judgment. Defendants argue that Plaintiff's double-submission of her expenses in violation of Company policy clearly establishes a legitimate business reason for terminating Plaintiff's employment, and that Plaintiff cannot show that this reason was a pretext. The Court agrees.

Plaintiff concedes that Defendants have articulated a legitimate business reason for the termination of her employment, i.e., expense fraud (Pl. Resp. at 16 ). Plaintiff argues, however, that the mistake on her expense report was not the real reason she was discharged, and that the evidence shows a "palpable animus toward older workers," exhibited by Defendant Anderson and encouraged by Mahoney (*id.* at 17).

Plaintiff contends that Defendant Anderson, with Company support, openly advanced a philosophy of "out with the old and in with new," and that she did not fit in Anderson's work atmosphere, which was one of gambling, excessive drinking and all night partying—activities that

9

might be enjoyed by younger branch managers, but might not be by older employees. Plaintiff reasons that when Anderson found the mistake on her expense report, he pursued it as a means of instigating her firing—an opportunity he exploited.

In support of her contentions, Plaintiff cites to circumstances that purportedly undermine the expense "mistake" as the claimed reason for her discharge, including that (1) Defendant Anderson had "multiple, purposeful and unreported personal expenses on his corporate credit card – he was getting repeated cash advances from the Company to gamble at casinos," so he could not have been too concerned with Plaintiff's questionable expenses; (2) Anderson, Willerer and Mahoney "were ultimately fired for ethics, credibility problems, inappropriate behavior and comments and poor treatment of co-workers"; and (3) the investigation into her expenses was anything but "thorough," and if the Company had truly believed she was manipulating her expenses, the investigation logically would have taken a different course, such as a check of her personal accounts, a request for repayment of the funds, and reporting her to certifying authorities to revoke her securities license, none of which happened (Pl. Resp. at 17-19).

Although Plaintiff's arguments have emotional appeal, the Court finds them unavailing under the applicable legal standards. As noted, "[a] plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler,* 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). The circumstances cited by Plaintiff do not establish pretext under (1) or (3) above, since the facts show that Plaintiff submitted duplicate expenses in violation of Company policy, which is grounds for termination of employment

10

with Liberty Mutual.  And with respect to (2), despite Plaintiff's theories regarding Defendant Anderson "engineering" her discharge, the evidence shows that Plaintiff was in fact discharged as the result of the expense investigation and the QRC involving various Company officials, pursuant to legitimate, well-established Company policy.  Plaintiff conceded during her deposition that her submission of double-expenses could legitimately be viewed as the fraudulent submission of expenses (Pl. Dep., Defs. Ex. 93, at 266).  That other employees, including Anderson, were ultimately discharged for similar reasons runs counter to Plaintiff's claim that her violation of Company policy was a pretext for her termination of employment.  Plaintiff's claim of age discrimination fails under the applicable legal standards.

Because the Court concludes that Defendants' Motion for Summary Judgment is properly granted, Defendants' Motion to Strike Inadmissible Evidence Submitted by Plaintiff in Response to Defendants' Motion for Summary Judgment is moot.

### III.  Conclusion

Defendants' Motion for Summary Judgment (Dkt 52) is GRANTED.  Defendants' Motion to Strike Inadmissible Evidence Submitted by Plaintiff in Response to Defendants' Motion for Summary Judgment (Dkt 80) is DENIED as moot.

A Order consistent with this Opinion will be entered.

DATED: October 25, 2011                             /s/ Janet T. Neff
                                                    JANET T. NEFF
                                                    United States District Judge